UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

GOVERNMENT EMPLOYEES INSURANCE CO.,          Docket No.: 12 CV 04295
et al.,

                              Plaintiffs,

        -against-

AMD CHIROPRACTIC, P.C., et al.,

                              Defendants.

-------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR DEFAULT JUDGMENT

Barry I. Levy (BL 2190)
Max Gershenoff (MG 4648)
David V. Koenig (DK 6579)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 357-3000
Facsimile:  (516) 357-3333

*Counsel for Plaintiffs, Government
Employees Insurance Co., GEICO Indemnity
Co., GEICO General Insurance Company
and GEICO Casualty Co.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF PERTINENT FACTS ....................................................................................... 1

    I.    Procedural History ............................................................................................................. 1

    II.   GEICO's Allegations Against the Defaulting Defendants ........................................... 2

ARGUMENT ................................................................................................................................. 3

I.     The Standards on This Motion ............................................................................................. 3

II.    GEICO is Entitled to Default Judgment on its First Cause of Action Against the PC
        Defendants for a Declaratory Judgment ............................................................................. 5

     A.    GEICO Has Established the Existence of an Actual Case or Controversy and
          This Court Has Granted Default Judgment on Declaratory Judgment Claims
          Under Substantially Similar Circumstances ........................................................... 5

     B.    The Court May Consider Matters Outside of the Complaint in Determining
          Whether Default Judgment is Appropriate With Respect to GEICO's
          Declaratory Judgment Claim .................................................................................. 7

     C.    The Fogarty Decl. and the Allegations in GEICO's Complaint Establish
          That GEICO Complied With the "30-Day Rule" in Processing the
          Defaulting Defendants' Pending Fraudulent No-Fault Claims, and the "30-
          Day Rule" Therefore Presents No Bar to Default Judgment on GEICO's
          Declaratory Judgment Claim ................................................................................ 10

III.   GEICO is Entitled to Default Judgments Against the Defaulting Defendants on Its
        Common Law and RICO Claims ...................................................................................... 12

     A.    GEICO's Third Cause of Action, Sixth Cause of Action, and Ninth Cause of
          Action Against the Defaulting Defendants for Common Law Fraud are Legally
          Sufficient .............................................................................................................. 12

     B.    GEICO's Fourth Cause of Action, Seventh Cause of Action and Tenth Cause of
          Action Against the Defaulting Defendants for Unjust Enrichment are Legally
          Sufficient .............................................................................................................. 17

     C.    GEICO's Second Cause of Action, Fifth Cause of Action, Eighth Cause of
          Action, and Eleventh Cause of Action for Substantive Violation of the Civil
          RICO Statute are Legally Sufficient ...................................................................... 17

IV.   GEICO is Entitled to Treble Damages on its RICO Claims ............................................. 23

V.    GEICO is Entitled to Pre-Judgment Interest on its Common Law Fraud Claims ............... 23

VI.   Joint and Several Liability Should Be Imposed on the Defaulting Defendants .................. 24

CONCLUSION ............................................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

380544 Can., Inc. v. Aspen Tech., Inc.,
   633 F. Supp. 2d 15 (S.D.N.Y. 2009)........................................................................................14

520 E. 81st St. Assocs. v. New York,
   19 A.D.3d 24, 799 N.Y.S.2d 1 (1st Dept. 2005).......................................................................24

Action S.A. v. Marc Rich & Co.,
   951 F.2d 504 (2d Cir. 1991) ......................................................................................................4

Agamede Ltd. v. Life Energy & Tech. Holdings, Inc.,
   2007 U.S. Dist. LEXIS 4698 (E.D.N.Y. 2007) .........................................................................4

AIU Insurance Co. v. Olmecs Med. Supply, Inc.,
   2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. 2005) ......................................................................16

Allstate Ins. Co. v. Ahmed Halima,
   2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. February 22, 2009)............................................13, 19

Allstate Ins. Co. v. Lyons,
   843 F. Supp. 2d 358 (E.D.N.Y. 2012)...................................................................10, 18, 22, 23

Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation, P.C.,
   2009 U.S. Dist. LEXIS 91291 – 20 (E.D.N.Y. 2009).........................................................18, 19

Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Local 14-
   14B v. Angel Constr. Group, LLC,
   2009 U.S. Dist. LEXIS 126620 (E.D.N.Y. 2009)......................................................................8

Antoine v. Atlas Turner, Inc.,
   66 F.3d 105 (6th Cir. 1995) .......................................................................................................9

Au Bon Pain Corp. v. Artect, Inc.,
   653 F.2d 61 (2d Cir. 1981) ..............................................................................................4, 7, 10

Beauford v. Helmsley,
   865 F.2d 1386 (2d Cir. 1989) ..................................................................................................20

Cablevision Sys. New York City Corp. v. Abramov,
   980 F. Supp. 107 (E.D.N.Y. 1997) ...........................................................................................4

CapFinancial Props. CV1, LLC v. Highway 210, LLC,
  2011 U.S. Dist. LEXIS 35582 (D. Kan. 2011) ............................................................................9

Cardinal Chem. Co. v. Morton Int'l, Inc.,
  508 U.S. 83, 113 S. Ct. 1967, 124 L. Ed. 2d 1 (1993) ................................................................5

Carriafielio-Diehl & Associates, Inc. v. D & M Elec. Contracting, Inc.,
  12 A.D.3d 478, 784 N.Y.S.2d 617 (2d Dept. 2004) ..................................................................17

Chiropractic Back Care of Queens Vil., P.C. v ELRAC, Inc.,
  31 Misc. 3d 1209A (Dist. Ct. Nassau Cty. 2011) ......................................................................11

Cont'l Ins. Co. v. Huff Enters.,
  2009 U.S. Dist. LEXIS 104126 (E.D.N.Y. 2011) ........................................................................8

County of Suffolk v. Amerada Hess Corp.,
  447 F. Supp. 2d 289 (S.D.N.Y. 2006) .......................................................................................24

D'Orange v. Feely,
  894 F. Supp. 159 (2d Cir.1996) ................................................................................................23

De Falco v. Bernas,
  244 F.3d 286 (2d Cir. 2001) ..............................................................................................19, 21

E.R. Squibb & Sons, Inc. v. Lloyd's & Co.,
  241 F.3d 154 (2d Cir. 2001) .......................................................................................................6

Fair Price Med. Supply Corp. v. Travelers Indem. Co.,
  10 N.Y.3d 556 (2008) ..........................................................................................................10, 11

Frazier v. Absolute Collection Serv.,
  767 F. Supp. 2d 1354 (N.D. Ga. 2010) .......................................................................................9

Friendly Physician, P.C. v GEICO Ins. Co.,
  29 Misc. 3d 128A (A.T. 2d Dep't 2010) ....................................................................................11

G-I Holdings v. Baron & Budd,
  238 F. Supp. 2d 521 (S.D.N.Y. 2002) .......................................................................................21

Golden Pacific Bancorp v. F.D.I.C.,
  273 F.3d 509 (2d Cir. 2001) .....................................................................................................17

Gov't Emples. Ins. Co. v. Damien,
  2011 U.S. Dist. LEXIS 138365 (E.D.N.Y. 2011) ................................................................ passim

Gov't Emples. Ins. Co. v. Infinity Health Prods.,
  2012 U.S. Dist. LEXIS 58058 (E.D.N.Y. 2012) ..........................................................................7

Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,
    973 F.2d 155, 159 (2d Cir. 1993)...............................................................................................4

Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.,
    973 F.2d 155 (2d Cir. 1992) ................................................................................................4, 10

Kaye v. Grossman,
    202 F.3d 611 (2d Cir.2000) ......................................................................................................17

Lavian v. Haghnazari,
    884 F. Supp. 670 (E.D.N.Y. 1995) ..........................................................................................21

Lenox Hill Hosp. v Allstate Ins. Co.,
    31 Misc. 3d 1222A (Dist. Ct. Nassau Cty. 2011) ....................................................................11

Liberty Mut. Ins. Co. v. Blessinger,
    2007 U.S. Dist. LEXIS 21781 (E.D.N.Y. 2007) ......................................................................20

Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.,
    801 F.2d 13 (2d Cir.1986) ........................................................................................................24

Maryland Casualty Co. v. Rosen,
    445 F.2d 1012 (2d Cir. 1971) .....................................................................................................5

Mason Tenders v. Taher Contracting Co., Inc.,
    2005 U.S. Dist. LEXIS 43364 (S.D.N.Y. 2005).........................................................................3

Metro. Transp. Auth. v. Contini,
    2005 WL 1565524 (E.D.N.Y. 2005)....................................................................................21, 22

Moss v. Morgan Stanley, Inc.,
    719 F.2d 5 (2d Cir. 1993) .........................................................................................................17

NAP, Inc. v. Shuttletex, Inc.,
    112 F. Supp. 2d 369 (S.D.N.Y. 2000)........................................................................................6

Norena-Giraldo v. Inglese Worldwide Corp.,
    2011 U.S. Dist. LEXIS 49778 (M.D. Fla. 2011) ........................................................................9

Olin Corp. v. Consol. Aluminum Corp.,
    5 F.3d 10 (2d Cir. 1993) .............................................................................................................5

Orion Pictures Corp. v. Showtime Networks, Inc.,
    4 F.3d 1095 (2d Cir. 1993) .........................................................................................................6

Oxford Health Plans (NY) Inc. v. Bettercare Health Care Pain Management & Rehab PC,
    305 A.D.2d 223 (1st Dep't 2003) .............................................................................................14

Perfect Dental, PLLC, v. Allstate Insurance Company,
538 F. Supp. 2d 543 (E.D.N.Y. 2007)..................................................................................7

Powers v. British Vita, P.L.C.,
57 F.3d 176 (2d Cir. 1995) .................................................................................................15

Ravo v. Rogatnick,
70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104 (1987)..................................................25

RLI Ins. Co. v. May Constr. Co.,
2011 U.S. Dist. LEXIS 30673 (S.D.N.Y. 2011)........................................................................8

S&S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group Co.,
2012 U.S. Dist. LEXIS 38608 (E.D.N.Y. 2012) ........................................................................8

Schlaifer Nance & Co. v. Estate of Warhol,
119 F.3d 91 (2nd Cir. 1997)................................................................................................13

Seme v. E & H Prof'l Sec. Co.,
2010 U.S. Dist. LEXIS 48011 (D. Colo 2010) .............................................................................9

Shields v. Citytrust Bancorp,
25 F.3d 1124 (2d Cir. 1994) ...............................................................................................15

SKS Constructors, Inc. v. Drinkwine,
458 F. Supp. 2d 68 (E.D.N.Y. 2006)....................................................................................21

Sound Shore Med. Ctr. v. Progressive Cas. Ins. Co.,
2010 NY Slip Op 31950U (Sup. Ct. Nassau Cty. 2010)............................................................11

Spool v. World Child Int'l Adoption Agency,
520 F.3d 178 (2d Cir. 2008) ...............................................................................................20

State Farm Mut. Auto. Ins. Co. v. Cohan,
2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009).............................................................4, 7, 13

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008) ................................................................14, 19

State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.,
589 F. Supp. 2d 221 (E.D.N.Y. 2008)..............................................................................14, 19

State Farm Mut. Auto. Ins. Co. v. Rabiner,
749 F. Supp. 2d 94 (E.D.N.Y. 2010)....................................................................................17

State Farm Mutual Auto Ins. Co. v. Grafman,
2009 U.S. Dist. LEXIS 86451 (E.D.N.Y. 2009) ....................................................................18

State Farm v. Bronx Healthcare Medical, P.C.,
2009 U.S. Dist. LEXIS 125785 (E.D.N.Y. 2009)..........................................................................7

Terwilliger v. Terwilliger,
206 F.3d 240 (2nd Cir. 2000) ......................................................................................................24

Tosto v. Zelaya,
2003 U.S. Dist. LEXIS 8085 (S.D.N.Y. May 12, 2003)..............................................................23

Universal Acupuncture v. State Farm,
196 F. Supp. 2d 378 (S.D.N.Y. 2002).....................................................................................6, 14

## PRELIMINARY STATEMENT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "Plaintiffs" or "GEICO") respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Fed. R. Civ. P. 55(b)(2), and the Court's inherent power, granting GEICO default judgment against Defendants AMD Chiropractic, P.C. ("AMD"), St. Marks Chiropractic, P.C. ("St. Marks") and DGI Chiropractic, P.C. ("DGI)(collectively the "PC Defendants"), as well as Danette Stefanelli, D.C. ("Stefanelli")(collectively the "Defaulting Defendants").

The record in this matter is clear. Each of the Defaulting Defendants was served with the Summons and Complaint in this action, yet the Defaulting Defendants failed to respond to the Complaint in any manner. Accordingly, the Clerk of the Court entered their respective defaults. None of the Defaulting Defendants currently serve in the United States military.

Given the facts established by the Defaulting Defendants' default – and as set forth herein – GEICO's Complaint sets forth legally sufficient claims for: (i) violations of the RICO Act, 18 U.S.C. §§ 1962(c)); (ii) common law fraud; (iii) unjust enrichment; and (iv) a declaratory judgment. Accordingly, default judgments are appropriate.

## STATEMENT OF PERTINENT FACTS

### I.      Procedural History

1.      GEICO commenced this action on August 27, 2012. See Docket No. 1.

2.      True and correct copies of the Summons and Complaint were served on each of the Defaulting Defendants and proofs of service subsequently were filed with the Court via ECF. See Docket Nos. 4-7.

3. Nonetheless, each of the Defaulting Defendants failed to timely appear or answer. Accordingly, the Clerk of the Court, on GEICO's motion, entered each of the Defaulting Defendants' defaults. See Docket Nos. 11-13, 15.

## II. GEICO's Allegations Against the Defaulting Defendants

4. The Complaint describes the Defaulting Defendants' fraudulent scheme in great detail. See Docket No. 1, passim. As set forth more fully in the Complaint, this action sought to recover more than $288,000.00 that the Defaulting Defendants wrongfully have stolen from GEICO since 2008 by submitting, and causing to be submitted, thousands of fraudulent bills through the PC Defendants relating to current perception threshold Tests ("CPT Tests") and chiropractic services, including initial chiropractic examinations and chiropractic adjustments ("Chiropractic Services"), that allegedly were provided to individuals involved in automobile accidents and eligible for coverage under GEICO automobile insurance policies (hereinafter "Insureds").

5. In particular, GEICO alleges that:

(i) the CPT Tests and Chiropractic Services that were billed to GEICO through the PC Defendants were not medically necessary, and were performed – to the extent that they were performed at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defaulting Defendants;

(ii) in many cases, the CPT Tests and Chiropractic Services that were billed to GEICO through the PC Defendants were not performed in the first instance, and the Defaulting Defendants simply created phony billing and treatment notes in support of their fraudulent charges;

(iii) the CPT Tests and Chiropractic Services that were billed to GEICO through the PC Defendants were performed – to the extent that they were performed at all – pursuant to illegal kickback arrangements between the Defaulting Defendants and the referring healthcare providers; and

(iv) the Defaulting Defendants had no right to receive payments for many of the bills submitted to GEICO for the CPT Tests and Chiropractic Services because the CPT Tests and Chiropractic Services were performed – to the extent that they were performed at all – by independent contractors, rather than by the PC Defendants' employees.

2

See Docket No. 1, ¶¶ 21-102.

6.     In addition to seeking recovery of the more than more than $288,000.00 that GEICO paid in reliance on the Defaulting Defendants' fraudulent billing, GEICO sought a declaration that it was not obligated to pay more than $1,409,000.00 in pending fraudulent claims submitted by or on behalf of the Defaulting Defendants through the PC Defendants seeking payment for the CPT Tests and Chiropractic Services. See Docket No. 1, ¶¶ 105-111, and passim.[1]

## ARGUMENT

### I.     The Standards on This Motion

Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of the Court "must" enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by [the] rules." Id. As discussed above, the Defaulting Defendants' defaults already have been entered in this case.

In the rare case when the complaint seeks a sum certain, the Clerk of the Court may enter a default judgment pursuant to Rule 55(b)(1)(10). See Moore's Federal Practice § 55.20[4] (Matthew Bender 3d ed). In all other cases, the party seeking the default judgment must apply to the Court. See Fed. R. Civ. P. 55(b)(2); Mason Tenders v. Taher Contracting Co., Inc., 2005 U.S. Dist. LEXIS 43364 at *2 (S.D.N.Y. 2005). Since GEICO's damages are not for a liquidated amount, GEICO has made this application to the Court.

Where a defendant has failed to enter an appearance in an action, Local Civil Rule 55.2(c) requires that the papers in support of a motion for default judgment be mailed to the defaulting defendants at their last known addresses. As set forth in the Declaration of Max Gershenoff (the

---

[1] As set forth more fully in the Complaint, Stefanelli already has been indicted for her activities at AMD, and a second indictment alleges that the facility from which DGI and St. Marks operated was a no-fault fraud mill that submitted large-scale fraudulent no-fault billing for chiropractic services. See Docket No. 1, ¶¶ 8-18.

3

"Gershenoff Decl."), submitted herewith, GEICO has complied with the notice and service requirements of Local Civil Rule 55.2(c). See Gershenoff Decl. at ¶ 23.

"Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability and the Court accepts those allegations as true." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)(same). As such, once a defendant has defaulted, "[a] plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." Agamede Ltd. v. Life Energy & Tech. Holdings, Inc., 2007 U.S. Dist. LEXIS 4698 at * 3 (E.D.N.Y. 2007)(internal quotations and citations omitted).

With respect to damages, State Farm Mut. Auto. Ins. Co. v. Cohan, 2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009) explained: "[A] default 'effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.'" Id. at * 9 - * 10, quoting Cablevision Sys. New York City Corp. v. Abramov, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). Cohan continued: "The movant must prove that the 'compensation sought relate[s] to the damages that naturally flow from the injuries pleaded.'" Id. at * 10, quoting Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1993).

While the Court may conduct a hearing under Rule 55(b)(2) of the Federal Rules of Civil Procedure, "[a]n evidentiary hearing is not required so long as there is a basis for the damages awarded[,]" such as "detailed affidavits and other documentary evidence." Id. (citing Transatlantic Marine Claims Agency v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) and Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991))(emphasis added). See also Gov't Emples. Ins. Co. v. Damien, 2011 U.S. Dist. LEXIS 138365 at * 22 (E.D.N.Y. 2011) adopted by 2011 U.S. Dist.

4

LEXIS 136661 (E.D.N.Y. 2011)(determining default judgment damages based on plaintiffs' submissions, and noting that "A court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. ... The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, as long as the court has ensured that there was a basis for the damages specified in the default judgment.")(Internal quotations and citation omitted).

Below, GEICO demonstrates that the facts pleaded are legally sufficient to state the causes of action asserted against the Defaulting Defendants. In addition, in the accompanying declarations and exhibits annexed thereto, it is respectfully submitted that GEICO sets forth not only an adequate basis for its claims, but also sufficient proof of its damages such that no hearing on damages is required. Accordingly, GEICO respectfully requests a default judgment against each of the Defaulting Defendants.

## II.   GEICO is Entitled to Default Judgment on its First Cause of Action Against the PC Defendants for a Declaratory Judgment

### A.   GEICO Has Established the Existence of an Actual Case or Controversy and This Court Has Granted Default Judgment on Declaratory Judgment Claims Under Substantially Similar Circumstances

As an initial matter, a party seeking a declaratory judgment from a district court must show the existence of an "actual case or controversy." Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95, 113 S. Ct. 1967, 124 L. Ed. 2d 1 (1993); 28 U.S.C. § 2201(a). An "actual controversy" is "real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993)(internal citations omitted). Moreover, declaratory relief is appropriate: (i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings. See Maryland Casualty Co.

v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971); E.R. Squibb & Sons, Inc. v. Lloyd's & Co., 241 F.3d 154, 175 (2d Cir. 2001). A court has broad discretion to decide whether to render a declaratory judgment. See Orion Pictures Corp. v. Showtime Networks, Inc., 4 F.3d 1095, 1100 (2d Cir. 1993). In deciding whether a plaintiff has stated a claim for declaratory relief, a federal court applies the state substantive law of the forum in which it sits. See NAP, Inc. v. Shuttletex, Inc., 112 F. Supp. 2d 369, 372 (S.D.N.Y. 2000); see also Universal Acupuncture v. State Farm, 196 F. Supp. 2d 378, 385 (S.D.N.Y. 2002).

GEICO's Complaint clearly establishes the existence of an actual case in controversy between GEICO and the PC Defendants regarding more than $1,409,000.00 in fraudulent billing for medical services that allegedly have been provided to GEICO's insureds. Specifically, GEICO's request for declaratory relief is based upon the pervasive, fraudulent scheme whereby the PC Defendants continue to seek payment for bills containing: (i) false and fraudulent misrepresentations to GEICO concerning the medical necessity of the services; (ii) false and fraudulent misrepresentations to GEICO concerning whether the services actually are performed in the first instance; (iii) false and fraudulent misrepresentations to GEICO concerning whether the services actually are performed by employees of the PC Defendants; and/or (iv) false and fraudulent misrepresentations to GEICO concerning whether the PC Defendants are entitled to bill for the services. See Docket No. 1, passim; see also Gershenoff Decl. at ¶¶ 6-14.

Because the PC Defendants have defaulted and are deemed to have admitted these allegations, GEICO is entitled to a declaration that it is not obligated to pay outstanding claims by the PC Defendants that currently exceed $1,409,000.00. See Declaration of Jennifer Fogarty ("Fogarty Decl."), annexed as Exhibit "B" to the Gershenoff Decl., at ¶ 9.

6

Indeed, this Court has granted substantially similar declaratory relief in substantially similar cases on motions for default judgment. See, e.g., Gov't Emples. Ins. Co. v. Infinity Health Prods., 2012 U.S. Dist. LEXIS 58058 at * 11 - * 14 (E.D.N.Y. 2012), adopted by 2012 U.S. Dist. LEXIS 58060 (E.D.N.Y. 2012)(granting default judgment on, among other things, claim for declaratory judgment to the effect that insurers had no obligation to pay pending fraudulent no-fault claims); Cohan, 2009 U.S. Dist. LEXIS 125653 at * 11 - * 12 (same); State Farm v. Bronx Healthcare Medical, P.C., 2009 U.S. Dist. LEXIS 125785 (E.D.N.Y. 2009)(defaulting defendants not entitled to seek or collect no-fault benefits from State Farm); Perfect Dental, PLLC, v. Allstate Insurance Company, 538 F. Supp. 2d 543, 549 (E.D.N.Y. 2007)(granting declaratory judgment in favor of insurers relating to unpaid claims by dental professional corporations for services performed by independent contractors).

Accordingly, GEICO's Complaint sets forth all of the requisite elements to establish a proper claim for a declaratory judgment in the context of this matter, and the requested declaration should be granted.

**B.  The Court May Consider Matters Outside of the Complaint in Determining Whether Default Judgment is Appropriate With Respect to GEICO's Declaratory Judgment Claim**

As indicated above, Courts often consider only the allegations in the complaint when determining liability on a motion for default judgment. See, e.g., Au Bon Pain Corp., supra. Even so, this Court may consider matters outside of the Complaint in determining whether default judgment is appropriate with respect to GEICO's declaratory judgment claim.

For instance, Fed. R. Civ. P. 55(b)(2) explicitly permits Courts to "conduct hearings or make referrals ... when, to enter or effectuate [default] judgment, it needs to ... establish the truth of any allegation by evidence ... ." Thus, Rule 55 contemplates that a Court may consider matters outside of the pleading in determining whether to impose liability in the context of a default judgment motion.

In keeping with this standard, Courts within the Second Circuit have considered affidavits and other materials de hors the Complaint in determining whether a plaintiff has established liability on a default judgment motion. For example, in S&S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group Co., 2012 U.S. Dist. LEXIS 38608 (E.D.N.Y. 2012), adopted by 2012 U.S. Dist. LEXIS 38605, the plaintiff asserted a thinly-pleaded breach of contract claim against the defendant, who subsequently defaulted. Although the Court observed that the complaint, standing alone, was insufficient to establish the defendant's liability for purposes of default judgment, the Court considered the affidavit of plaintiff's principal – which "contain[ed] all of the factual details on [defendant's] alleged breaches that were omitted from the Complaint" – in determining that the plaintiff had established liability. Id. at * 20 - * 22.

Similarly, in Cont'l Ins. Co. v. Huff Enters., 2009 U.S. Dist. LEXIS 104126 at * 13 - * 16 (E.D.N.Y. 2011), a District Judge permitted a Magistrate Judge to consider a plaintiff's submissions – including affidavits – in determining whether, among other things, declaratory relief was warranted in the context of a defendant's default. As the Court reasoned, "[w]ithout considering issues beyond the Complaint, the court would be unable to determine whether the allegations establish liability. A further inquiry into the merits is required." Id.

Likewise, in Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Local 14-14B v. Angel Constr. Group, LLC, 2009 U.S. Dist. LEXIS 126620 at * 5 - * 7 (E.D.N.Y. 2009)(Orenstein, M.J.), in considering liability on a motion for default judgment, the Court: (i) directed the plaintiffs to submit additional evidence, beyond the complaint, that they wished the Court to consider; and (ii) considered evidence submitted with the plaintiffs' attorneys' affidavit. See also RLI Ins. Co. v. May Constr. Co., 2011 U.S. Dist. LEXIS 30673 at * 7 - * 10

(S.D.N.Y. 2011)(court considered plaintiff's submissions, including affidavits and complaint, in deciding liability on motion for default judgment).

Courts outside of the Second Circuit likewise have evinced a willingness to consider affidavits or declarations in determining whether to impose liability on a motion for default judgment. See, e.g., Norena-Giraldo v. Inglese Worldwide Corp., 2011 U.S. Dist. LEXIS 49778 at * 1 - * 11 (M.D. Fla. 2011)(where allegations in the complaint, standing alone, were insufficient to support default judgment, Court considered affidavits and supplemental testimonial evidence in granting default judgment); CapFinancial Props. CV1, LLC v. Highway 210, LLC, 2011 U.S. Dist. LEXIS 35582 at * 5 - * 6, * 12 - * 13 (D. Kan. 2011)(Court may consider facts set forth in affidavits submitted in support of motion for default judgment in determining whether a plaintiff has established a claim for relief); Seme v. E & H Prof'l Sec. Co., 2010 U.S. Dist. LEXIS 48011 at * 5 (D. Colo 2010)(same); Frazier v. Absolute Collection Serv., 767 F. Supp. 2d 1354, 1362-1365 (N.D. Ga. 2010)(granting default judgment after establishing liability through both the complaint and plaintiff's declaration, and noting that "[b]esides the pleadings, a court may also consider evidence presented in the form of an affidavit or declaration" in granting default judgment); see also Antoine v. Atlas Turner, Inc., 66 F.3d 105, 111 (6th Cir. 1995)("Use of affidavits in granting default judgments does not violate ... due process ... .")

Accordingly, in determining whether GEICO has established the sufficiency of its declaratory judgment claim, the Court may consider the Fogarty Decl., submitted herewith as Exhibit "B" to the Gershenoff Decl.

**C.    The Fogarty Decl. and the Allegations in GEICO's Complaint Establish That GEICO Complied With the "30-Day Rule" in Processing the Defaulting Defendants' Pending Fraudulent No-Fault Claims, and the "30-Day Rule" Therefore Presents No Bar to Default Judgment on GEICO's Declaratory Judgment Claim**

As the Court is aware, N.Y. Ins. Law § 5106(a) sets forth a deadline for the timely payment of no-fault insurance claims (the "30-day rule"). Under the 30-day rule, when an insurer fails to pay or deny a claim within 30 days after a claimant has supplied proof of his claim, that insurer is barred from asserting most defenses in any subsequent suit (or arbitration) brought by the claimant for his benefits payment, including defenses based on lack of medical necessity or – arguably – defenses to the effect that the billed-for services never were provided in the first instance. See, e.g., Fair Price Med. Supply Corp. v. Travelers Indem. Co., 10 N.Y.3d 556, 563 (2008); see also Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 378 (E.D.N.Y. 2012).

Because GEICO's declaratory judgment claim seeks to avoid liability on the PC Defendants' pending billing because, among other things, the underlying services either were medically useless or not provided in the first instance, the Court – in considering whether GEICO's declaratory judgment claim is legally sufficient – might find it necessary to determine whether GEICO complied with the 30-day rule. If not, the Court might find that GEICO is precluded from asserting its declaratory judgment claim, because the claim arguably is defensive in nature and requires compliance with the 30-day rule as a condition precedent.

As the Court may note, GEICO's Complaint specifically alleges compliance with the 30-day rule. See Docket No. 1, ¶¶ 103-104. In light of the Defaulting Defendants' default, the Court should accept these allegations as true for purposes of this motion. See, e.g., Greyhound Exhibitgroup, supra; Au Bon Pain Corp., supra.

In any case, the Court may – as discussed above – consider the Fogarty Decl. in determining whether GEICO did comply with the 30-day rule and, by extension, whether GEICO's declaratory judgment claim is legally sufficient.

In this context, it is essential to note that cases that have followed Fair Price indicate that an insurer can establish compliance with the 30-day rule either by submitting actual proof of compliance with respect to each discrete claim, or by establishing that it has standard office practices and procedures for the timely mailing of NF-10 denial of claim forms or verification requests. If the latter – i.e., if an insurer establishes that it has standard office practices and procedures for the timely mailing of NF-10 forms or verification requests – a rebuttable presumption arises that the NF-10 form was mailed within the 30-day time limit. See, e.g., Friendly Physician, P.C. v GEICO Ins. Co., 29 Misc. 3d 128A (A.T. 2d Dep't 2010)("Since the affidavit executed by defendant's claim representative stated that she began working for defendant after the denial of claim forms at issue were allegedly mailed by defendant, and defendant did not otherwise establish the actual mailing of the denial of claim forms or its standard office practices and procedures for the mailing of denial of claim forms during the pertinent time period, defendant failed to establish that its denial of claim forms were timely mailed")(emphasis added); Sound Shore Med. Ctr. v. Progressive Cas. Ins. Co., 2010 NY Slip Op 31950U (Sup. Ct. Nassau Cty. 2010)("The affidavit ... sets forth the insurer's standard office practice and procedure used to insure that the verification requests and notice of denial were properly addressed and mailed. In so doing, defendant has established a presumption of mailing.")(emphasis added); Lenox Hill Hosp. v Allstate Ins. Co., 31 Misc. 3d 1222A (Dist. Ct. Nassau Cty. 2011)("The no-fault insurer must establish through proof in admissible form either the actual timely, mailing of the denial or it has '...standard office practices and procedures designed to ensure that items were properly addressed and mailed '")(emphasis added); Chiropractic Back Care

of Queens Vil., P.C. v ELRAC, Inc., 31 Misc. 3d 1209A (Dist. Ct. Nassau Cty. 2011)("In the instant matter, the defendant has met its prima facie burden of submitting sufficient proof demonstrating that it mailed the IME notices to the assignor. Specifically, the affidavit of Mandy Grella, an Operations Manager for MES Solutions (hereinafter "MES"), an entity that schedules IMEs for the defendant, provided competent evidence of the standard office practice and procedure of MES when assigned by the Defendant to generate and mail IME notification letters to claimant/assignors. The affidavit established that MES's standard office practice and procedure in place at the time relevant to the instant litigation ensured that the IME notice letters were properly addressed and mailed.")(emphasis added).

In the present case, even if GEICO had not specifically alleged compliance with the 30-day rule in its Complaint, the Fogarty Decl. more than adequately sets forth GEICO's standard office practices and procedures with respect to compliance with the 30-day rule, as well as GEICO's actual compliance with the 30-day rule in the context of the no-fault claims submitted by the PC Defendants that are the subject of GEICO's declaratory judgment claim. See Gershenoff Decl., Exhibit "B", ¶¶ 10-24. The Fogarty Decl. thereby establishes a presumption of compliance with the 30-day rule and – read in the context of the Defaulting Defendants' default – it also establishes the legal sufficiency of GEICO's First Cause of Action for a declaratory judgment.

## III. GEICO is Entitled to Default Judgments Against the Defaulting Defendants on Its Common Law and RICO Claims

### A. GEICO's Third Cause of Action, Sixth Cause of Action, and Ninth Cause of Action Against the Defaulting Defendants for Common Law Fraud are Legally Sufficient

A claim for common law fraud in New York requires facts demonstrating: (i) a material misrepresentation or omission of fact; (ii) made with knowledge of its falsity (i.e., scienter); (iii) reasonable reliance on the part of the plaintiff; and (iv) and damages caused by the misrepresentation

12

or omission. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2ⁿᵈ Cir. 1997); see also

Cohan, supra at * 12 - * 13. Given the facts set forth in GEICO's Complaint, GEICO's Third Cause

of Action, Sixth Cause of Action and Ninth Cause of Action against the Defaulting Defendants for

common law fraud are legally sufficient.

First, GEICO's Complaint sets forth the actual misrepresentations that the Defaulting

Defendants made, or caused to be made, in the PC Defendants' billing. These misrepresentations fall

into three separate categories, including:

(i)     In every claim, the representation that the PC Defendants were lawfully licensed, and
        therefore, eligible to receive No-Fault Benefits pursuant to N.Y. Insurance Law §
        5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the PC Defendants
        were not properly licensed in that they were chiropractic professional corporations
        that unlawfully paid kickbacks for their patient referrals.

(ii)    In every claim, the representation that the billed-for actually were performed, and that
        the billed-for services were medically necessary, when in fact the services frequently
        were not performed at all and, to the extent that they were performed, they were not
        medically necessary and were performed pursuant to kickbacks that the Defaulting
        Defendants paid in exchange for patient referrals and pursuant to a pre-determined
        fraudulent protocol designed solely to financially enrich the Defaulting Defendants.

(iii)   In every claim for services allegedly performed by individuals other than Stefanelli,
        the representation that the pertinent services were performed by one of the PC
        Defendants' employees, when in fact the pertinent services were performed by
        independent contractors.

See Docket No. 1, passim.

These categories of misrepresentations are legally sufficient to establish fraud by the

Defaulting Defendants. See, e.g., Damien, supra at * 10 (granting default judgment on fraud claims

based on substantially similar allegations that defendants misrepresented the corporate legitimacy of

professional corporations in No-Fault billing); Cohan, supra at * 13 - * 15 (granting default judgment

on fraud claim predicated on, among other things, misrepresentations as to the medical and dental

necessity of the billed-for services); Allstate Ins. Co. v. Ahmed Halima, 2009 U.S. Dist. LEXIS

22443 at *23 (E.D.N.Y. February 22, 2009)(recognizing Allstate's right to seek recovery for medically unnecessary tests based on theories of fraud and/or unjust enrichment); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS 71156 at *52 (E.D.N.Y. 2008)(same); State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C., 589 F. Supp. 2d 221, 235-237 (E.D.N.Y. 2008)(recognizing State Farm's right to seek recovery for medically unnecessary electro-diagnostic tests based on theories of fraud and/or unjust enrichment); Universal Acupuncture Pain Services, P.C. v. State Farm Mutual Automobile Ins. Co., 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002)(fraud claim recognized where a professional corporation falsified records to indicate that it provided medically necessary treatment); Oxford Health Plans (NY) Inc. v. Bettercare Health Care Pain Management & Rehab PC, 305 A.D.2d 223, 224 (1st Dep't 2003)(claims of fraud properly premised on misrepresentations as to the necessity of the services and the actual performance of the services).

Second, GEICO's Complaint establishes scienter. "In the context of common law fraud, a plaintiff can establish a strong inference of scienter either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." 380544 Can., Inc. v. Aspen Tech., Inc., 633 F. Supp. 2d 15, 29 (S.D.N.Y. 2009). Thus, even where motive and opportunity is not apparent, it still is possible to plead scienter by identifying circumstances indicating conscious misbehavior by the defendant. Id.

Although GEICO need only plead facts showing that the Defaulting Defendants either had both the motive and opportunity to commit fraud or facts demonstrating strong circumstantial evidence of conscious misbehavior or recklessness, the Complaint pleads facts establishing scienter through either standard. For example, the Complaint pleads detailed facts establishing that the

14

Defaulting Defendants masterminded and participated in an ongoing fraudulent scheme in which they used the PC Defendants to submit large-scale fraudulent billing to GEICO and other insurers. See Docket No. 1, passim. Accordingly, at a minimum, the Defendants have acted with a reckless disregard for the harm that their misrepresentations might cause to GEICO. As such, scienter is manifest. See Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995) (scienter proven where conduct consciously committed); see also Hollis Med. Care, P.C., supra at fn. 11 (scienter sufficiently pleaded where defendants used professional corporation as a vehicle to submit fraudulent claims and managed the professional corporation so as to maximize the number of fraudulent claims that could be submitted).

The Complaint also satisfies the scienter element because it sets forth specific facts demonstrating both a motive and the opportunity to commit fraud. "Motive entails concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged, and opportunity entails the means and likely prospect of achieving concrete benefits by the means alleged." Shields v. Citytrust Bancorp, 25 F.3d 1124, 1130 (2d Cir. 1994). In this case, the Defaulting Defendants not only had a "likely prospect of achieving concrete benefits" by their scheme, but they actually did realize "concrete benefits" by stealing more than $288,000.00 from GEICO. See Docket No. 1, ¶ 6.

Third, the allegations in the Complaint more than sufficiently describe how GEICO justifiably and reasonably relied on the facially-valid claims documents submitted or caused to be submitted by the Defaulting Defendants through the PC Defendants. See Docket No. 1, ¶¶ 93-102. As a matter of law, GEICO was entitled to rely upon the facially valid claim submissions and the representations contained therein in determining whether the claims should have been paid. See Damien, supra at * 9 - * 13 (granting default judgment to insurers alleging fraudulent no-fault billing

15

scheme, and noting that the insurers established "reasonable reliance by including in their complaint an explanation of the statutory and contractual requirements obligating [them] to respond promptly to facially valid claims submitted under the statutory scheme"); AIU Insurance Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666 at *45-47 (E.D.N.Y. 2005)(insurer's allegations that they paid defendants in reliance on "facially valid" No-Fault claims sufficiently stated the reliance element for a cause of action in common law fraud). In addition, the Complaint not only pleads actual reliance, it also pleads the factual basis for GEICO's reliance, thereby explaining why it was justifiable. Specifically, facts demonstrating – among other things – that: (i) the claims were falsely verified; (ii) the Defaulting Defendants acted to conceal their fraud; and (iii) GEICO was under statutory and contractual obligations to process the PC Defendants' claims within 30 days, which forced GEICO to rely on the Defendants' facially-valid submissions. See Docket No. 1, ¶¶ 93-102.

Finally, GEICO has established the requisite injury. The Complaint alleges that GEICO was injured as a result of the fraudulent scheme perpetrated by the Defaulting Defendants, by having paid more than $288,000.00 reasonably believing that it had the obligation to do so, when in fact it did not. See Gershenoff Decl., Exhibit "B", ¶ 6 (setting forth the exact amounts that GEICO paid as the result of the fraudulent billing submitted through the PC Defendants); Damien, supra at * 11 (insurers sufficiently pleaded damages to support default judgment on fraud claims by "alleging a total amount of benefits paid out to the fraudulent entities, as well as attaching to their complaint lists of many of the claims paid out.")

Accordingly, GEICO should be granted default judgment on its Third Cause of Action, Sixth Cause of Action and Ninth Cause of Action against the Defaulting Defendants for common law fraud.

**B.** **GEICO's Fourth Cause of Action, Seventh Cause of Action and Tenth Cause of Action Against the Defaulting Defendants for Unjust Enrichment are Legally Sufficient**

GEICO's Complaint also establishes its entitlement to recover from the Defaulting Defendants the money paid to the PC Defendants on its Fourth Cause of Action, Seventh Cause of Action and Tenth Cause of Action for unjust enrichment. Recovery for unjust enrichment requires allegations establishing that: (i) the defendant benefitted; (ii) at the plaintiff's expense; and (iii) equity and good conscience requires restitution. See, e.g., Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir.2000); Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001); see also Carriafielio-Diehl & Associates, Inc. v. D & M Elec. Contracting, Inc., 12 A.D.3d 478, 784 N.Y.S.2d 617, 618 (2d Dept. 2004). Given the allegations detailing the massive fraudulent scheme committed by the Defaulting Defendants against GEICO resulting in the payment of more than $288,000.00 based on billing that the Defaulting Defendants submitted or caused to be submitted through the PC Defendants, GEICO has sufficiently established a claim for unjust enrichment. See Damien, supra at * 14 - * 15 (granting default judgment on unjust enrichment claim based on substantially similar allegations); State Farm Mut. Auto. Ins. Co. v. Rabiner, 749 F. Supp. 2d 94, 102-103 (E.D.N.Y. 2010)(sustaining unjust enrichment claim based on similar allegations regarding No-Fault billing submitted through fraudulently incorporated medical professional corporation).

**C.** **GEICO's Second Cause of Action, Fifth Cause of Action, Eighth Cause of Action, and Eleventh Cause of Action for Substantive Violation of the Civil RICO Statute are Legally Sufficient**

To state a legally-sufficient RICO claim, a plaintiff must establish that: (i) the defendant; (ii) through the commission of two or more predicate acts; (iii) constituting a pattern; (iv) of racketeering activity; (v) directly or indirectly participates; (vi) in an enterprise; (vii) the activities of which affect interstate commerce. Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1993) (citing 18 U.S.C. § 1962(a) (c)). Given the benefit of all legitimate inferences that can be drawn from the facts alleged in

the Complaint, GEICO meets these requirements and has shown that Stefanelli violated the RICO statute.

### (i)    The Enterprises

The RICO statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." See 18 U.S.C. § 1961(4). In the present case, GEICO has alleged that the PC Defendants – three professional corporations – constitute RICO enterprises. See Docket No. 1, ¶¶ 113, 133, 153. In addition, GEICO has alleged that the PC Defendants – taken together – constitute an association in fact RICO enterprise. See Docket No. 1, ¶ 173. This is sufficient. See, e.g., Lyons, 843 F. Supp. 2d at 367-369.

### (ii)    The Racketeering Activities

Pursuant to U.S.C. § 1961(1)(B), "racketeering activity" is comprised of specific enumerated crimes, including mail fraud. See 18 U.S.C. § 1961(1)(B). Under the statute, a complaint must plead at least two predicate acts of "racketeering activity." See, Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation, P.C., 2009 U.S. Dist. LEXIS 91291 at * 16 – 20 (E.D.N.Y. 2009). The predicate acts alleged in the Complaint consist of numerous violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the mails to submit fraudulent billing to GEICO. See State Farm Mutual Auto Ins. Co. v. Grafman, 2009 U.S. Dist. LEXIS 86451 at *38 - * 39 (E.D.N.Y. 2009)(mail fraud requires that the pleading allege that defendants engaged in: (i) a scheme to defraud; (ii) to get money or property; (iii) furthered by the use of the mails). The master claim/billing charts attached to the Complaint as Exhibits "1", "2" and "3", coupled with the specific references within the Complaint demonstrating the pervasive nature of the fraudulent billing practices, as masterminded by Stefanelli, which involved the use of the United States mail system, sufficiently allege the requisite predicate acts and provide Stefanelli with specific notice of her role in

the fraud and specific fraudulent activity attributable to her, including the dates on which the fraudulent billing was mailed to GEICO. See Hollis Med. Care, P.C., supra at 25;  Liguori, supra, 589 F. Supp.2d 237; CPT Med. Services, supra, 2008 U.S. Dist. LEXIS 71156 at * 39 – 40 (all finding predicate acts to be sufficiently pleaded under analogous circumstances).

### (iii)    The Participation

In the RICO context, "participation" means "participation in the operation or management of the enterprise." De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001). Under the "operation or management" test, to participate, directly or indirectly, in the conduct of an enterprise's affairs, "one must have some part in directing those affairs." Id. RICO liability is not limited to those with primary responsibility, nor to those with a formal position in the enterprise, but only requires some part in directing the enterprise's affairs. Id.

In this context, Stefanelli clearly "participated" in the PC Defendant enterprises in a manner sufficient to support RICO liability. As the Complaint alleges, Stefanelli masterminded and implemented a massive fraudulent scheme through which the PC Defendants were used to submit large-scale, fraudulent billing to GEICO and other insurers. See Docket No. 1, ¶¶ 30-102.  These "participation" allegations are sufficient to plead civil RICO claims against Stefanelli. See Damien, supra at * 17 - * 19; Halima, supra at * 18 - 20; see also CPT Med. Servs., supra at * 11.

### (iv)    The Patterns

RICO provides that a "pattern of racketeering activity" must consist of "at least two acts of racketeering activity" undertaken within 10 years. See 18 U.S.C. § 1965(1). To establish a "pattern" sufficient to satisfy the statute, the Complaint must allege facts tending to show that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Valley Physical Medicine & Rehabilitation, P.C., supra at * 11. The continuity necessary to prove a RICO

pattern can be alleged either as closed-ended continuity, or open-ended continuity. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008).

To establish closed-ended continuity, a plaintiff must establish a series of related predicate acts extending over a substantial period of time. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008). See also Beauford v. Helmsley, 865 F.2d 1386, 1391 (2d Cir. 1989)("What is required is that the complaint plead a basis from which it could be inferred that the acts of racketeering activity were neither isolated nor sporadic"). While what constitutes a "substantial period of time" necessary to demonstrate a closed-ended pattern of racketeering activity is not subject to a bright-line rule, the Second Circuit has indicated that it is disinclined to find closed-ended continuity where the predicate acts occurred over less than two years' time. Spool, supra.

By these metrics, GEICO sufficiently has alleged closed-ended continuity with respect to the DGI enterprise (thousands of fraudulent bills over more than two and a half years), the AMD enterprise (thousands of fraudulent bills over more than two years), and the association in fact enterprise comprised of all of the PC Defendants, taken together (thousands of fraudulent bills over at least two and a half years). See Docket No. 1, ¶¶ 114, 154, 176; See, also, Damien, supra at * 18 (plaintiff insurer established closed-ended RICO pattern on default judgment motion by alleging a "vast number of similar fraudulent claims" submitted over a three-year period); see also Liberty Mut. Ins. Co. v. Blessinger, 2007 U.S. Dist. LEXIS 21781 at * 7 - * 8 (E.D.N.Y. 2007)(almost three years of racketeering activity held sufficient to satisfy closed ended continuity, "especially in light of the volume of predicate acts alleged to have taken place during that time period"); Kalika, supra at * 46 - * 47 (1,256 fraudulent claims submitted over a four-year period satisfied continuity requirement);

Lavian v. Haghnazari, 884 F. Supp. 670, 683 (E.D.N.Y. 1995)(finding closed-ended continuity where pattern of racketeering activity extended over twenty-nine months).

To establish open-ended continuity, a plaintiff need not show that the predicate acts extended over a substantial period of time, but rather "must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." De Falco v. Bernas, 244 F.3d 286, 323 (2d Cir. 2001); see also SKS Constructors, Inc. v. Drinkwine, 458 F. Supp. 2d 68, 78 (E.D.N.Y. 2006)(same). "The key considerations to the question of open ended continuity are the nature of the enterprise and the predicate acts alleged. ... If the enterprise alleged is engaged in 'inherently unlawful' acts, there is a threat of continuing criminal activity and open ended continuity exists." Id. (Internal citation omitted).

"On the other hand, if the enterprise is engaged in a legitimate business, an allegation of open ended continuity requires evidence supporting an inference that the predicate acts are the regular way of doing business, or that the nature of the predicate acts themselves implies a threat of continuing criminal activity." SKS Constructors, Inc., supra; see also G-I Holdings v. Baron & Budd, 238 F. Supp. 2d 521, 544 (S.D.N.Y. 2002)(same). "A threat of continuity may be established where the predicate acts are inherently unlawful and were made in pursuit of inherently unlawful goals even if ... the period spanned by the racketeering acts was short. ... Essentially, if the nature of the acts indicate that the defendants had a continuing intent and ability to carry on the racketeering activity, a threat of continuity is established." Metro. Transp. Auth. v. Contini, 2005 WL 1565524 at * 4 (E.D.N.Y. 2005).

By these standards, GEICO sufficiently has pleaded open-ended continuity with respect to the DGI enterprise, the AMD enterprise, the St. Marks enterprise, and the association in fact enterprise comprised of all of the PC Defendants, taken together. First, the Complaint alleges that the

PC Defendants enterprises engaged in inherently unlawful acts – to wit, that they continue to submit and attempt collection on fraudulent claims from GEICO and other New York automobile insurers. See Docket No. 1, passim. In addition, GEICO has alleged that these inherently unlawful acts were taken in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through the submission of fraudulent no-fault charges. Id. See, e.g., Metro. Transp. Auth., supra at * 4 (open-ended continuity found where embezzlement, an act considered inherently unlawful, was committed in pursuit of an inherently unlawful goal, namely the theft of money from the MTA).

Second, even assuming that the PC Defendants – which exist for the purpose of submitting fraudulent no-fault claims – could be considered "legitimate businesses", GEICO has alleged that the predicate acts of mail fraud are the regular way that Stefanelli operated the PC Defendants.

Specifically, the Complaint alleges that "[t]he predicate acts of mail fraud are the regular way in which Stefanelli operates [the PC Defendants], insofar as [the PC Defendants are] not engaged in a legitimate chiropractic practice, and acts of mail fraud therefore are essential in order for [the PC Defendants] to function." See Docket No. 1, ¶¶ 115, 135, 155, 178. Moreover, these allegations are not made in a vacuum – rather, they are the culmination of a series of allegations that specify why the PC Defendants never have been eligible to bill for or to collect no-fault benefits (see id. at ¶¶ 82-90), and which specify how Stefanelli nonetheless used the PC Defendants as vehicles to submit fraudulent no-fault claims while simultaneously attempting to conceal the fact of their ineligibility. See id. Simply put, GEICO has satisfied the open-ended continuity requirement because its factual allegations establish that predicate acts of mail fraud are the regular way in which Stefanelli operated the PC Defendants. See, e.g., Lyons, 843 F. Supp. 2d at 370 (open-ended pattern sufficiently pleaded where enterprise's "reason for being" was to facilitate the submission of fraudulent no-fault claims).

Third, GEICO has alleged that "the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity." See Docket No. 1, ¶¶ 115, 135, 155, 178.   Again, these allegations are not made in a vacuum. Rather, they are the culmination of a series of allegations recounting how Stefanelli used the PC Defendants to submit large-scale fraudulent billing to GEICO and other insurers, while at the same time taking considerable steps to conceal the fact that the billing submitted through the PC Defendants was illegitimate. See id. at ¶¶ 30-102.

Accordingly, GEICO has sufficiently alleged RICO "patterns", and default judgment should issue against Stefanelli on GEICO's substantive RICO claims.

## IV.   GEICO is Entitled to Treble Damages on its RICO Claims

Under the civil RICO statute, GEICO is entitled to recover treble damages. See 18 U.S.C. §1964(c)("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit …"). Accordingly GEICO should be awarded judgment in the amount of $864.000.00 on its RICO claims against Stefanelli, representing three times the actual amounts that GEICO paid in reliance on on the billing that was submitted by Stefanelli through the PC Defendants. See Gershenoff Decl., Exhibit "B"; see also Damien, supra at * 25 - * 26 (awarding treble RICO damages on default judgment, in substantially similar case); D'Orange v. Feely, 894 F. Supp. 159 (2d Cir.1996)(affirming district court's denial of motion to set aside entry of default and award of treble damages for default judgment pursuant to RICO).

## V.   GEICO is Entitled to Pre-Judgment Interest on its Common Law Fraud Claims

GEICO is entitled to pre-judgment interest against the Defaulting Defendants on its fraud claims. See Tosto v. Zelaya, 2003 U.S. Dist. LEXIS 8085, at *23-*24 (S.D.N.Y. May 12, 2003).

Indeed, under New York law, an award of pre-judgment interest on damages for fraud is mandatory. See Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp., 801 F.2d 13, 28 (2d Cir.1986).

The award of prejudgment interest is a substantive issue, governed here by the state substantive law of the forum state in which the federal court sits, namely New York law. See Terwilliger v. Terwilliger, 206 F.3d 240, 249 (2nd Cir. 2000)(applying state law to the question of prejudgment interest in a diversity case). The source of the right to pre-judgment interest in New York is set forth in N.Y. C.P.L.R. § 5001. Specifically, C.P.L.R. § 5001(b) states that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed". Furthermore, pre-judgment interest is calculated at the non-compounded rate of nine percent per annum. N.Y. C.P.L.R. §§ 5001(a), 5004; see 520 E. 81st St. Assocs. v. New York, 19 A.D.3d 24, 799 N.Y.S.2d 1, 4 (1st Dept. 2005)(as a general rule, statutory pre-judgment interest rate is not compounded). Here, it is suggested that interest be calculated from the first day following the year in which the payments were made on the fraudulent claims by GEICO to the PC Defendants. See, e.g., Damien, supra at * 26 - * 27 (adopting this method to calculate interest in a substantially similar case). The basis for GEICO's proposed pre-judgment interest calculation under this method (a method more conservative than that permitted under the C.P.L.R.) totals $118,584.42, and is described in Exhibit "D" attached to the Gershenoff Decl.

## VI.   Joint and Several Liability Should Be Imposed on the Defaulting Defendants

The Complaint in this case alleges significant facts establishing that various combinations of the Defaulting Defendants acted jointly and/or concurrently to produce individual injuries, and as a result, should be held jointly and severally liable for GEICO's damages based on the respective common law fraud claims and unjust enrichment claims.[2] See County of Suffolk v.

---

[2] GEICO does not seek to impose joint and several liability on its civil RICO claims, because the civil RICO claims are asserted only against Stefanelli, not against the PC Defendants.

Amerada Hess Corp., 447 F. Supp. 2d 289, 297 (S.D.N.Y. 2006); Ravo v. Rogatnick, 70 N.Y.2d

305, 520 N.Y.S.2d 533, 514 N.E.2d 1104 (1987).

In particular:

(i)     DGI and Stefanelli should be held jointly and severally liable on GEICO's Third
        Cause of Action and Fourth Cause of Action;

(ii)    St. Marks and Stefanelli should be held jointly and severally liable on GEICO's Sixth
        Cause of Action and Seventh Cause of Action;

(iii)   AMD and Stefanelli should be held jointly and severally liable on GEICO's Ninth
        Cause of Action and Tenth Cause of Action;

## CONCLUSION

For the reasons stated herein, GEICO's motion should be granted in its entirety.

Dated: Uniondale, New York
       December 14, 2012

                        Respectfully submitted,

                        RIVKIN RADLER LLP

                        By:_____/s/_____
                              Barry Levy (BL-2190)
                              Max Gershenoff (MG-4648)
                              David V. Koenig (DK-6579)
                          926 RXR Plaza
                          Uniondale, NY 11556-0926
                          Tel.: (516) 357-3000
                          Fax: (516) 357-3333

                          *Counsel for Plaintiffs, Government Employees
                          Insurance Co., GEICO Indemnity Co, GEICO
                          General Insurance Company and GEICO Casualty
                          Co.*

25