UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GOVERNMENT EMPLOYEES                              REPORT AND
INSURANCE CO., et al.,                            RECOMMENDATION
                               Plaintiffs,

              -against-                           12-CV-4295 (NG) (JO)

AMD CHIROPRACTIC, P.C., et al.,
                               Defendants.
------------------------------------------------------------X

James Orenstein, Magistrate Judge:

       Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company,

GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO")

have filed a Complaint accusing defendant chiropractor Danette Stefanelli, D.C. ("Stefanelli") and

three defendant chiropractic professional corporations that she owns (respectively, AMD

Chiropractic, P.C. ("AMD"); DGI Chiropractic, P.C. ("DGI"), and St. Marks Chiropractic, P.C.

("St. Marks"); or collectively, the "PC Defendants") of engaging in a scheme to submit and

prosecute fraudulent no-fault insurance claims. Docket Entry ("DE") 1. None of the defendants has

responded to the Complaint, and GEICO therefore seeks a default judgment against each. DE 18.

Upon a referral from the Honorable Nina Gershon, United States District Judge, I now make this

report and, for the reasons set forth below, respectfully recommend that the court enter judgment

against the defendants and award the plaintiffs monetary and declaratory relief as set forth below.

I.     Background

       A.      New York's Statutory No-Fault Insurance Regime

       New York enacted the Comprehensive Automobile Insurance Reparations Act, N.Y. Ins.

Law §§ 5101-5109, to "ensure prompt compensation for losses incurred by accident victims

without regard to fault or negligence [and] to reduce the burden on the courts[.]" *Med. Soc'y of

State of N.Y. v. Serio*, 100 N.Y.2d 854, 860 (2003). No-fault insurers reimburse patients for up to

$50,000 in personal injury benefits without proof of fault of the other driver. Reimbursements can include all necessary expenses incurred for medical and other professional health services. *See* N.Y. Ins. Law § 5102(a)(1), (b). To guarantee prompt compensation, the regulatory scheme's "30-day Rule" requires insurers to request any necessary "verification" of a claim within ten days of its receipt, and then pay or deny the claim within 30 days. *See id*. § 5106(a); 11 N.Y. Comp. Code R. & Regs. ("N.Y.C.R.R.") § 65-3.8(a), (c).

An insured patient has the right to assign a claim for no-fault insurance benefits to her healthcare provider, who in turn may submit requests for payment directly to the insurance company. *See* 11 N.Y.C.R.R. § 65-3.11(a). New York healthcare providers submitting such claims must use a form, commonly called the NF-3, that bears the following statutorily-prescribed warning: "Any person who knowingly and with intent to defraud any insurance company … files [a] statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime." N.Y. Ins. L. § 403(d); *see also* 11 N.Y.C.R.R. § 65-3 App. 13.

In addition, medical professional corporations may not seek or receive reimbursement for healthcare services provided by independent contractors, even if the independent contractor is licensed to provide the service. *See* N.Y.C.R.R. § 65-3.11(a); N.Y. Dep't of Ins. Op. Letter, Feb. 21, 2001; N.Y. Dep't of Ins. Op. Letter, Mar. 21, 2005. Healthcare service providers are also ineligible to receive no-fault benefits if they violate "any applicable New York State or local licensing requirement necessary to perform [healthcare services] in New York." 11 N.Y.C.R.R. § 65-3.16(a)(12); *see also State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313 (2005). This includes a prohibition on paying kick-backs for patient referrals. *See* 8 N.Y.C.R.R. § 29.1(b)(3).

2

B.      The Defendants' Fraudulent Scheme

The following facts are drawn from the Complaint and exhibits incorporated therein. GEICO underwrites no-fault automobile insurance in New York. Complaint ¶¶ 7, 21-23. Defendant Stefanelli is a chiropractor licensed in New York who owns AMD, DGI, and St. Marks – New York professional service corporations that operate at clinics throughout the New York City area. *Id*. ¶¶ 8-9, 13-15, 31. As detailed below, the defendants engaged in a fraudulent scheme to submit no-fault insurance claims to GEICO for reimbursement that involved unlawful kick-backs for patient referrals, medically unnecessary services, and misrepresentations about provider eligibility. *See id*. ¶¶ 94-99. GEICO's allegations in that regard parallel the accusations that a federal grand jury leveled in an October 2011 indictment that charged Stefanelli and others with conspiracy to commit mail and healthcare fraud. *Id*. ¶¶ 10-12, 16-18 & Ex. 5.

First, the defendants made unlawful kick-back payments, disguised as lease payments for the clinics' space or personnel, to get the clinics' staff members to refer new patients to the PC Defendants. *Id*. ¶¶ 25, 31-34. Second, once the patients had been referred, the defendants provided them with medically unnecessary services pursuant to a predetermined protocol designed to maximize billing. *Id*. ¶¶ 71, 75. For example, the defendants subjected almost every patient to current perception threshold ("CPT") tests – a type of sensory nerve diagnostic test with little scientific evidence of medical usefulness – regardless of whether they had any indication that a given patient suffered from any nerve damage. Moreover, the defendants also administered additional diagnostic tests that rendered the CPT tests redundant and then sought reimbursement for all of the tests by falsifying the pertinent insurance codes and supporting documentation they submitted to GEICO. *Id*. ¶¶ 37, 49-51, 66-71 & Exs. 9-10. The defendants likewise administered

chiropractic tests and adjustments to virtually every patient regardless of need, and also exaggerated the quantity of services provided in their submissions to GEICO. *Id*. ¶¶ 33-34, 73, 75, 77-79, 81. Third, the defendants submitted claims that misrepresented to GEICO the medical necessity of the services they performed, misrepresented the eligibility of such services for no-fault reimbursement, and in most cases misrepresented the fact that independent contractors, rather than Stefanelli (the PC Defendants' sole employee), had performed the services at issue. *Id*. ¶¶ 82, 84-92, 95, 97. As a result of such fraudulent practices, GEICO has paid over $288,000 in no-fault benefits to the three PC defendants, and has additional pending unpaid claims amounting to $1,409,000, hundreds of which are currently the subject of state court collection actions. *Id*. ¶¶ 2, 6.

  C. <u>GEICO's Compliance With New York Insurance Law</u>

  As noted above, New York's no-fault rules imposed strict time constraints on GEICO to verify and decide whether to pay claims for no-fault benefits. GEICO complied with those rules and as a result paid over $288,000 to the PC Defendants before it discovered their fraudulent practices and thereafter began denying their claims. *Id*. ¶¶ 101-02. GEICO has internal practices that ensure that no-fault claims are timely paid or denied, or that requests for additional verification of the claims are properly and timely mailed to meet GEICO's obligations under the insurance laws. *Id*. ¶ 103. With respect to the PC Defendants' claims that GEICO did not pay in full, it either timely denied each claim or timely issued a request for additional verification about the claim with which the claimant never complied. *Id*. ¶ 104.

### D.     Proceedings

GEICO filed its Complaint on August 27, 2012. DE 1. It served process on the PC defendants on August 30, 2012, and on Stefanelli on September 28, 2012. *See* DE 4 through DE 7. None of the defendants ever responded to the Complaint. GEICO sought the entry of default with respect to the PC Defendants on October 4, 2012, and the Clerk granted each request the next day. *See* DE 8 through DE 13. GEICO sought and obtained the entry of Stefanelli's default on October 23, 2012. *See* DE 14; DE 15. GEICO filed the instant motion for default judgment on December 14, 2012. DE 18. The court granted the motion and referred the matter to me for a report and recommendations to determine the scope of relief and to address GEICO's request for declaratory relief. DE 22. I then scheduled a hearing and afforded GEICO an opportunity to submit additional support for its request for relief and also gave the defendants an opportunity to respond. DE 23. The defendants did not respond, but GEICO did submit supplemental papers. *See* DE 25. At an inquest on March 19, 2013, GEICO's claims manager Jennifer Fogarty ("Fogarty") testified about GEICO's damages. *See* DE 28 (minute entry); DE 31 (Transcript) ("Tr."). After the hearing, GEICO submitted a letter citing a recent decision addressing the propriety of declaratory relief in a similar case. DE 30 (enclosing a copy of Judge Gleeson's opinion in *Gov't Emps. Ins. Co. v. Five Boro Psychological Services, P.C.*, --- F.Supp.2d ----, 2013 WL 1618243 (E.D.N.Y. Apr. 15, 2013)).

## II.     Discussion

### A.     Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v.*

5

*Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g., Finkel*, 577 F.3d at 84.

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. In addition to the inquest testimony of claims manager Fogarty, GEICO has submitted the following documentary evidence: the affidavits of its counsel (DE 20 ("Gershenoff Decl.")); DE 25-2 ("Gershenoff Decl. II")) and Fogarty (DE 20-2 ("Fogarty Decl."); DE 25-3 ("Fogarty Decl. II")); copies of regularly maintained business records or summaries of information from regularly maintained databases pertaining to claims made to GEICO by each of the PC Defendants (DE 20-3 to -6 (Fogarty Decl. Exs. 1 to 4)); DE 25-4 to -12 (Fogarty Decl. II Exs. 1 to 9)); documentation of GEICO's litigation costs (DE 20-7 (Gershenoff Decl. Ex. C)); and calculations of pre-judgment interest (DE 20-8 (Gershenoff Decl. Ex. D); DE 25-13 (Gershenoff Decl. II Ex. B)).

6

B.   Liability

GEICO has asserted a total of eleven causes of action that fall into four categories: one claim for declaratory judgment against all of the PC Defendants, Complaint ¶¶ 105-11; four RICO claims accusing Stefanelli of conducting the affairs of an enterprise through a pattern of mail fraud, with the subject enterprise in each claim being one of the PC Defendants or an *ad hoc* association of all three, *id*. ¶¶ 112-18 (DGI), 132-38 (St. Marks), 152-58 (AMD), 172-81 (all three PC Defendants associated in fact); three claims of common law fraud, each naming Stefanelli and one of the PC Defendants, *id*. ¶¶ 119-25 (DGI), 139-45 (St. Marks), 159-65 (AMD); and three claims of unjust enrichment, each naming Stefanelli and one of the PC Defendants, *id*. ¶¶ 126-31 (DGI), 146-51 (St. Marks), 166-71 (AMD). As explained below, these different causes of action entitle GEICO to different forms of relief. Accordingly, although the court has already granted GEICO's motion for default judgment, my assignment to recommend appropriate relief requires an assessment of the extent to which each cause of action in the Complaint is adequately pleaded. I therefore discuss each category of claims in turn below, starting with the common law fraud and unjust enrichment claims that arise under New York law.[1]

---

[1]  Applying New York's choice-of-law rules, *see*, *e.g.*, *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008), the question is which state has the greatest interest in the tort claims asserted here. *See*, *e.g.*, *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005) (citing *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)). New York appears to have a greater interest in the instant claims than any other state: although Stefanelli is a New Jersey resident, she is licensed and practices in New York; the three PC Defendants are all incorporated in New York and operate in that state; and GEICO does business and issued the relevant insurance policies in New York. I therefore conclude that New York law applies to GEICO's state law claims. *See*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 228 (E.D.N.Y. 2008).

1. <u>Common Law Fraud</u>

In order to sustain its fraud claims, GEICO must allege: a misrepresentation or omission of fact that the defendant knew to be false; that the defendant made the representation for the purpose of inducing GEICO to rely upon it; and that GEICO did justifiably rely upon it to its detriment. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) (citations omitted); *see also Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996). GEICO must plead the circumstances of fraud with particularity. *See* Fed. R. Civ. P. 9(b). To do so, the Complaint must specify the statements that GEICO contends were fraudulent, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent. *See Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989) (citations omitted); *Gerritsen v. Glob Trading, Inc.*, 2009 WL 262057, at *6 (E.D.N.Y. Feb. 4, 2009) (citing *Anatian v. Coutts Bank (Switz.), Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)) (internal quotation marks omitted). Because each of its fraud claims names multiple defendants, GEICO must allege specifically the fraud perpetrated by each defendant. *Gerritsen*, 2009 WL 262057, at *6 (citing *Bezuszka v. L.A. Models, Inc.*, 2006 WL 770526, at *13 (S.D.N.Y. Mar. 24, 2006) (internal quotation marks and additional citations omitted)). The complaint need only generally aver a defendant's knowledge of a misrepresentation or omission and intent to defraud, but it must "allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Cosmas*, 886 F.2d at 12-13 (citation omitted). Such an inference may be shown either by alleging facts "to show that defendants had both motive and opportunity to commit fraud," or by alleging facts "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted).

The Complaint and its exhibits set forth facts sufficient to support the fraud claims against each of the defendants. GEICO's submissions include a representative sample of the allegedly fraudulent NF-3 forms and letters of medical necessity completed by Stefanelli on behalf of each PC Defendant, as well as a list of each claim that GEICO alleges is fraudulent. Complaint Exs. 1.1 to 1.10, 9, 10.[2] The defendants' false statements include misrepresentations about: the legitimacy of referral services they provided to referring clinics, *id*. ¶¶ 32-36; the actual provision of diagnostic procedures and treatment, the existence or extent of the patients' injuries, and the medical necessity of the services allegedly provided, *id*. ¶¶ 37, 46, 57-65, 70-76; whether the services were actually provided, *id*. ¶¶ 77-81; the coding of the services in the claim forms, *id*. ¶¶ 66-69; and the legal relationship between the PCs and the actual providers of the services and their eligibility under the no-fault laws, *id*. ¶¶ 82-90. Every submission includes a fraudulent statement about the eligibility of the given PC Defendant to receive benefits despite the disqualification of each due to its participation in the kick-back referral scheme. *Id*. ¶¶ 93-98, 101. GEICO adequately pleads that it justifiably relied on the defendants' submission of facially valid no-fault reimbursement forms as it endeavored to meet its own statutory and contractual obligations to process the no-fault claims, and that the defendants' fraudulent actions have caused GEICO to suffer monetary damages. *Id*. ¶ 101. Finally, GEICO adequately alleges that the defendants knowingly engaged in these practice to induce timely payment on the facially valid claims. *Id*. ¶¶ 90, 94-98. I therefore conclude that GEICO is entitled to judgment on each of its fraud claims. *See Gov't Emps. Ins. Co. v. IAV Med. Supply, Inc.*, 2013 WL 764735, at *4-6

---

[2]  GEICO may rely on such a representative sample to plead a viable claim; it need not submit all of the defendants' allegedly fraudulent statements. *See, e.g.*, *Gov't Emps. Ins. Co. v. Damien*, 2011 WL 5976071, at *4 n.5 (E.D.N.Y. Nov. 3, 2011) (report & recommendation), *adopted by* 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2011).

(E.D.N.Y. Feb. 8, 2013) (report and recommendation), *adopted by* 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013).

2.   <u>Unjust Enrichment</u>

To prevail on its unjust enrichment claims, GEICO must establish that the defendants benefitted at its expense and that "equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quotation omitted); *see also James M. Liguori, M.D.*, 589 F. Supp. 2d at 235-36. The "essence" of the claim "is that one party has received money or a benefit at the expense of another." *Kaye*, 202 F.3d at 616 (quotation omitted). GEICO adequately alleges that all of the defendants benefitted when the PC Defendants received payment from GEICO by fraudulently submitting claims for which they were ineligible. I therefore conclude that GEICO is entitled to judgment on each of its unjust enrichment claims. *See*, *e.g.*, *IAV Medical Supply, Inc.*, 2013 WL 764735, at *7; *State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 102-03 (E.D.N.Y. 2010); *Damien*, 2011 WL 5976071, at *5.

3.   <u>RICO</u>

Under the circumstances of this case – in which GEICO has asserted that the defendants engaged in repeated acts of mail fraud as a basis for accusing them of violating 18 U.S.C. § 1962(c) – in order to prevail on its RICO Act claims, GEICO must establish that the defendants directly or indirectly conducted, or participated in the conduct of an enterprise, the activities of which affect interstate commerce, through a pattern of racketeering activity consisting of at least two acts of mail fraud, and that it suffered injury to its business or property as a result. *See* 18 U.S.C. § 1964; *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1993); *Comm'l Cleaning Servs. v. Colin Serv. Sys. Inc.*, 271 F.3d 374, 380 (2d Cir. 2001) (citation omitted); *Damien*, 2011

10

WL 5976071, at *5 (citations omitted). I conclude that GEICO has met its burden with respect to each of its RICO Act claims.

Each of the four RICO Act claims focuses on a different enterprise: each of the three PC Defendants, respectively, as well as an *ad hoc* association of all three. GEICO's allegations suffice to satisfy the enterprise element with respect to each such claim. Each enterprise is either a corporation in itself, or an association-in-fact of such corporate entities. *See* 18 U.S.C. § 1961(4) (defining "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity"); Complaint ¶¶ 9, 13-14, 113, 133, 153, 173.[3] GEICO adequately alleges that each such enterprise affects interstate commerce, *id.* ¶¶ 113, 133, 153, 173; and also alleges sufficient facts to infer that each has an ascertainable structure and purpose as well as sufficient longevity to carry out that purpose. *See Boyle v. United States*, 556 U.S. 938, 947-48 (2009); Complaint ¶¶ 115, 135, 155, 173-74. Finally, the Complaint adequately pleads that each enterprise is distinct from both Stefanelli (the sole defendant named in each RICO Act cause of action) and the alleged pattern of racketeering activity. *See*, *e.g.*, *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *Allstate Ins. Co. v. Etienne*, 2010 WL 4338333, at *7 (E.D.N.Y. Oct. 26, 2010).

GEICO has also satisfied its pleading requirement with respect to the element of a pattern of racketeering activity consisting of multiple acts of mail fraud. The RICO Act explicitly defines the crime of mail fraud as a type of racketeering activity. 18 U.S.C. § 1961(1). GEICO adequately

---

[3] Notwithstanding the unambiguous statutory text – which includes in the definition of "enterprise" a "group of *individuals* associated in fact although not a legal entity[,]" 18 U.S.C. § 1961(4) (emphasis added) – the case law of this circuit interprets the definition also to include an *ad hoc* association comprised exclusively of corporate entities. *See United States v. Huber*, 603 F.2d 387, 394-94 (2d Cir. 1979); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 113 F. Supp. 2d 345, 365 (E.D.N.Y. 2000).

alleges multiple instances in which Stefanelli, pursuant to a scheme to submit fraudulent insurance claims to GEICO and thereby obtain GEICO's money, caused the various PC Defendants to place false and misleading documents in the mail with the intent to defraud. *See United States v. Wallach*, 935 F.2d 445, 461 (2d Cir. 1991); *Damien*, 2011 WL 5976071, at *6; Complaint ¶¶ 114, 134, 154, 176. GEICO has pleaded many more than two such acts in each of its RICO Act claims within the applicable time period, and its allegations also satisfy the remaining requirements of the pattern element, namely, relatedness among the predicate acts and continuity: specifically, the acts of mail fraud had common perpetrators and a common victim, and took place over a period of years with a threat of continuing harm. *See, e.g.*, *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240-41 (1989); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008); *Damien*, 2011 WL 5976071, at *6; *Chubb & Son Inc. v. Kelleher*, 2006 WL 1789118, at *4 (E.D.N.Y. Mar. 28, 2006); Complaint ¶¶ 1, 114, 116-17, 134, 136-37, 154, 156-57, 177.

Moreover, GEICO has adequately pleaded Stefanelli's participation in the conduct of each enterprise's affairs through that pattern of racketeering activity by alleging that Stefanelli, as the sole owner and employee of each of the three PC Defendants, directed the operation and management of each. Complaint ¶¶ 8, 114, 134, 154, 175-76, 178; *see DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) (participation element requires proof only that defendant had "some part in directing" the enterprise's affairs) (citations omitted); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004) (pleading requirement for participation element is easily met). Finally, GEICO has adequately pleaded Stefanelli's RICO Act violations harmed it by causing it to pay benefits for meritless insurance claims. Complaint ¶¶ 117, 137, 157, 180. I therefore conclude that GEICO has adequately pleaded each of its RICO Act claims.

12

4.     Declaratory Judgment

GEICO seeks a declaratory judgment that the PC Defendants have no right to receive payments for pending, unpaid bills submitted to GEICO for CPT tests or chiropractic services because the bills were submitted fraudulently. *See* Complaint ¶ 111; Gershenoff Decl. II Ex. C at 1-2; 28 U.S.C. §§ 2201-2202. Specifically, GEICO would have the court absolve it of the responsibility to pay any such claims on the grounds that the claims fraudulently seek payment for medically unnecessary services, services performed by independent contractors, services performed pursuant to an unlawful kick-back scheme, and services that were not performed in the first instance. *See* Complaint ¶ 111.

To state a claim for declaratory judgment, a plaintiff must allege that there is a substantial controversy between parties with adverse legal interests that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F. 3d 747, 752 (2d Cir. 1996) (quotations omitted). The controversy must be "real and substantial" such that declaratory relief will provide "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (quoting *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993)). Declaratory relief is appropriate "(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971) (citation omitted); *see also* 28 U.S.C. § 2201. A federal court applies the substantive law of the state in which it sits when deciding whether to award

declaratory relief. *See NAP, Inc. v. Shuttletex, Inc.*, 112 F. Supp. 2d 369, 372 (S.D.N.Y. 2000).

Under New York law, an assertion of defenses against payment of a no-fault insurance claim or

bill must affirmatively plead compliance with the applicable mandatory time limit for responding

to insurance claims. *See Hosp. for Joint Diseases v. Travelers Prop. Cas. Ins. Co.*, 9 N.Y.3d 312,

317-18 (2007) ("a carrier that fails to deny a claim within the 30-day period is generally precluded

from asserting a defense against payment of the claim") (citations omitted). An insurer can, by

establishing that it maintains and follows standard internal procedures for the timely mailing of

responses to no-fault claims, create a rebuttable presumption that the responses were mailed within

the time limit imposed by statute. *See, e.g., N.Y. & Presbyterian Hosp. v. Allstate Ins. Co.*, 814

N.Y.S.2d 687, 688 (App. Div. 2006); *Lenox Hill Hosp. v. Allstate Ins. Co.*, 930 N.Y.S.2d 175, at

*3 (N.Y. Dist. Ct. 2011).

GEICO asserts that it is entitled to declaratory relief because the defendants' scheme has

generated fraudulent insurance claims, in addition to those it has already paid, amounting to

$1,409,000.00. With respect to each such pending claim, GEICO has established either that it has

timely denied payment, that it has requested additional verification with no response from

defendants, or that the time to respond the claim has not elapsed. Complaint ¶¶ 2, 103-06 & Exs.

1.1 to 1.10 (listing all contested bills as of the date of the filing of the Complaint, inclusive of those

still pending). The pendency of these claims, and GEICO's demonstrated compliance with its

obligations under New York's no-fault insurance law, is a sufficient predicate for declaratory

relief. *See, e.g., Perfect Dental, PLLC v. Allstate Ins. Co.*, 538 F. Supp. 2d 543, 549 (E.D.N.Y.

2007) (granting declaratory judgment related to unpaid claims); 11 N.Y.C.R.R. § 65-3.8. I

therefore conclude that GEICO is entitled to declaratory relief.[4]

      C.     <u>Relief</u>

            1.     <u>Damages</u>

     Having established defendants' liability, GEICO must next establish its damages with

"reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. GEICO contends that it is entitled to a

total of $283,517.88 on its common law fraud and unjust enrichment claims. Gershenoff Decl. II

¶ 4 & Ex. C (Proposed Default Judgment) (revised). More specifically, GEICO asserts that, as a

result of the defendants' misconduct, it has needlessly paid $170,144.30 to AMD; $60,090.69 to St.

---

[4] GEICO argues that the court should not abstain from resolving its claim for declaratory relief simply because the defendants have in some instances initiated pending state court actions challenging the denial of insurance benefits. *See* DE 19 at 10-12. In doing so, GEICO understandably does not address two opinions, both issued after the submission of its memorandum of law, in which a judge of this court denied similar claims for declaratory relief against a defaulting defendant absent additional information about the status of pending state court collection actions. *See Gov't Emps. Ins. Co. v. Leica Supply, Inc.*, 2013 WL 1334177, at *2-4 (E.D.N.Y. Mar. 30, 2013) (Matsumoto, J.) (rejecting recommendation to grant declaratory relief and citing, *inter alia*, *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995); and *Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 245 (2d Cir. 2012)); *Gov't Emps. Ins. Co. v. Li-Elle Serv., Inc.*, 2013 WL 829274, at *2-3 (E.D.N.Y. Mar. 6, 2013) (same); *but see Five Boro Psychological Services, P.C.*, --- F. Supp. 2d ----, 2013 WL 1618243, at *7 (finding *Brillhart* abstention inapposite where, as here, the plaintiff seeks both damages and declaratory relief and declining to exercise abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). Even if *Colorado River* abstention might be appropriate in the circumstances in this case – and I am persuaded, for reasons similar to those discussed in *Five Boro*, that it is not – I would nevertheless recommend that the court grant declaratory relief because the defendants, by virtue of their default, have forfeited the right to seek such abstention. As the Supreme Court noted in *Colorado River*, the district court's duty to exercise jurisdiction, even where there is a concurrent state proceeding, is "virtually unflagging," 424 U.S. at 817; the abstention doctrine creates only "an extraordinary and narrow exception to th[at] duty[.]" *Id.* at 813 (quotation omitted). Just as the defendants could have chosen to contest GEICO's factual allegations by appearing in this case and answering the Complaint, so too could they have chosen, by appearing and filing a dismissal motion, to request that the court abstain from discharging its otherwise applicable duty to decide a case properly before it. The defendants having failed to do so, this court should not abstain *sua sponte*.

Marks, and $53,282.89 to DGI. *See id.* ¶ 4 & Ex. C (Proposed Default Judgment) (revised) at 4: *see also* Complaint ¶¶ 117, 137, 157. GEICO's claims manager, Fogarty, calculated these sums based on the results of specific queries of the databases GEICO maintains to track the payment status of each individual insurance claim it receives. Those results, produced in spreadsheet format, list in a separate line each individual payment for each allegedly fraudulent claim that the several PC Defendants submitted. *See* Gershenoff Decl. II ¶¶ 3-4; Fogarty Decl. II ¶¶ 4, 6 & Exs. 1-9. Based on this evidence, I conclude that GEICO has established its damages to a reasonably certain degree, and therefore recommend that the court find defendants liable for the state law claims in the total amount of $283,517.88, and I respectfully recommend that the court award that amount.[5]

Having established that Stefanelli is liable on each of the RICO claims, GEICO has also established that it is entitled to an award of treble damages, which are appropriately awarded in the context of a default. 18 U.S.C. § 1964(c); *see*, *e.g.*, *D'Orange v. Feely*, 894 F. Supp. 159, 163 (S.D.N.Y. 1995); *Chubb*, 2006 WL 1789118, at *5. The damages to be trebled are the same damages discussed above: the $283,517.88 that GEICO paid as a result of the PC Defendants' fraud. Trebling that amount produces a total of $850,553.64, and I therefore respectfully recommend that the court enter judgment against Stefanelli individually in the latter amount. To avoid duplicative awards, I recommend that the damages on the various claims discussed above be merged as follows: the court should award damages of $170,144.30 jointly and severally against AMD and Stefanelli; $60,090.69 jointly and severally against St. Marks and Stefanelli; $53,282.89

---

[5] I am satisfied that Fogarty's methodology is sound, but I have not checked the accuracy of the many individual calculations reflected in the exhibits to her declaration. To the extent any party believes Fogarty made an arithmetical error, it is of course free to identify any such specific error and the precise effect on the appropriate amount of damages in lodging any objections to this Report and Recommendation.

jointly and severally against DGI and Stefanelli; and $567,035.76 (the difference between the sum of the preceding amounts and the total trebled damages to be awarded on the RICO claims) against Stefanelli individually.

      2.   Interest

GEICO seeks pre-judgment interest only on its claim for fraud; it does not seek a discretionary award of prejudgment interest on its claims under the RICO Act (the text of which does not provide for such relief). *See, e.g., Nu-Life Const. Corp. v. Bd. of Educ. of City of N.Y.*, 789 F. Supp. 103, 105-06 (E.D.N.Y. 1992) (where treble damages are adequate to compensate plaintiffs, an award of prejudgment interest is inappropriate). On a state law claim, this court must look to New York law regarding an award of pre-judgment interest. *See Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999) (holding that pre-judgment interest is a question of substantive law); *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) (holding that state law governs the calculation of pre-judgment interest on supplemental state law claims). An award of pre-judgment interest on damages awarded for fraud is mandatory under New York law. *See In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996) (citations omitted). An award of pre-judgment interest on the state law fraud claims is not precluded by an award of treble damages on the RICO Act claims arising from the same conduct. *See, e.g., Chubb*, 2006 WL 1789118, at *5-6; *State Farm Mut. Auto. Ins. Co. v. Cohan*, 2010 WL 890975, at *1, *5 (E.D.N.Y. Mar. 8, 2010); *Damien*, 2011 WL 5976071, at *8-9.

New York law provides for an annual simple interest rate of nine percent. N.Y. C.P.L.R. § 5004. Interest upon damages "shall be computed from the earliest ascertainable date the cause of action existed," or, when damages are incurred at various times, interest may be calculated either

from the date each individual claim arose or from "a single reasonable intermediate date." *Id*.
§ 5001(b). In the context of insurance fraud, "prejudgment interest accrues from the date the
insurance company makes payment." *Chubb*, 2006 WL 1789118, at *5 (citations omitted). GEICO
requests that pre-judgment interest be computed from the first day of the year following the
payment of each individual fraudulent claim to the defendants. This methodology has been
followed in this district in other no-fault insurance fraud cases awarding damages on default
judgment. *See*, *e.g.*, *IAV Med. Supply, Inc.*, 2013 WL 764735, at *9. While the methodology is
appropriate, GEICO's calculations based on that method are incorrect, as its counsel has
acknowledged. *See* Tr. at 18-19. As set forth in the following tables, I have therefore done the
calculation myself, assuming an end date for such interest of September 9, 2013 (the earliest date
on which the court could enter judgment after allowing time for objections to this Report and
Recommendation).[6]

| AMD | | | | |
|---|---|---|---|---|
| Year of payment | 2008 | 2009 | 2010 | 2011 |
| Total claims paid | $0 | $84,438.13 | $82,592.41 | $3,113.76 |
| Interest rate | 0.09 | 0.09 | 0.09 | 0.09 |
| Time[7] | 4.69 years | 3.69 years | 2.69 years | 1.69 years |
| Interest accrued | $0 | $28,065.85 | $20,019.04 | $474.49 |
| TOTAL | | | | $48,559.37 |
| St. Marks | | | | |
| Year of payment | 2008 | 2009 | 2010 | 2011 |
| Total claims paid | $28,605.86 | $28,290.73 | $1,277.64 | $1,916.46 |
| Interest rate | 0.09 | 0.09 | 0.09 | 0.09 |
| Time | 4.69 years | 3.69 years | 2.69 years | 1.69 years |
| Interest accrued | $12,082.65 | $9,508.12 | $6,857.21 | $292.04 |
| TOTAL | | | | $28,740.01 |

---

[6] The numbers presented in the table are rounded to two digits for the sake of brevity; however, the actual calculations used to reach the total interest due do not incorporate such rounding.

[7] As explained above, the pertinent time period is from January 1 of the year following the date GEICO made payment on each claim through September 9, 2013.

| DGI | | | | |
|---|---|---|---|---|
| Year of payment | 2008 | 2009 | 2010 | 2011 |
| Total claims paid | $0 | $11,165.93 | $30,847.72 | $11,269.24 |
| Interest rate | 0.09 | 0.09 | 0.09 | 0.09 |
| Time | 4.69 years | 3.69 years | 2.69 years | 1.69 years |
| Interest accrued | $0 | $3,711.37 | $7,476.98 | $1,717.25 |
| TOTAL | | | | $12,905.60 |

*See* Gershenoff Decl. II Ex. B (providing a breakdown of the amounts paid in each year to each PC Defendant). Based on the foregoing calculations, I respectfully recommend that the court award a total amount of prejudgment interest of $90,204.98, allocated as follows: $48,559.37 jointly and severally against AMD and Stefanelli; $28,740.01 jointly and severally against St. Marks and Stefanelli; and $12,905.60 jointly and severally against DGI and Stefanelli.

3.    Costs

Having established liability on its RICO Act claims, GEICO is entitled to recover its costs. 18 U.S.C. 1964(c).[8] GEICO requests $2,089.16 in "reasonable" costs and disbursements. Gershenoff Decl. II Ex. C (Proposed Default Judgment) (revised). GEICO has submitted a redacted document that lists the dates and amounts of four disbursements its counsel made between June 26, 2012 (which predates the filing of the instant Complaint) and November 16, 2012, but which provides no further information about the disbursements. *See* Gershenoff Decl. I ¶ 19 & Ex. C. None of the four dates is on or near the date on which the docket reveals GEICO paid the $350 fee to file its Complaint, and none of the four amounts is equal to the filing fee; I therefore infer that the costs for which it seeks reimbursement do not include that filing fee. In the absence of any information about the costs GEICO incurred, I cannot conclude that any such costs were reasonable. I therefore decline to recommend any award of costs.

---

[8] The statute also provides for an award of reasonable attorneys' fees, *id.*, but GEICO does not seek such relief.

III.   Recommendation

For the reasons set forth above, I respectfully recommend that the court award the plaintiffs judgment in the total amount of $940,758.62, allocated as follows: $170,144.30 in damages, plus $48,559.37 in pre-judgment interest, jointly and severally against defendants AMD Chiropractic, P.C. and Stefanelli on the state law claims against them; $60,090.69 in damages, plus $28,740.01 in pre-judgment interest, jointly and severally against defendants St. Marks Chiropractic, P.C. and Stefanelli on the state law claims against them; $53,282.89 in damages, plus $12,905.60 in pre-judgment interest, jointly and severally against defendants DGI Chiropractic, P.C. and Stefanelli on the state law claims against them; and $850,553.64 against defendant Stefanelli alone on the RICO Act claims, with credit for the damages awarded on the state claims (for a reduced total of $567,035.76 for which defendant Stefanelli alone is liable). In addition, I respectfully recommend that the court enter a declaratory judgment that the plaintiffs are not obligated to pay the outstanding claims submitted by the three corporate defendants.

IV.   Objections

I direct the plaintiffs to serve a copy of this Report and Recommendation on each defendant by certified mail, and to file proof of service no later than August 23, 2013. Any objections to this Report and Recommendation must be filed no later than September 6, 2013. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner &*

*Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92

(2d Cir. 2010).

      SO ORDERED.

Dated: Brooklyn, New York
       August 21, 2013

                                                 /s/
                                   JAMES ORENSTEIN
                                   U.S. Magistrate Judge